**No. 23-11222**

In the

# United States Court of Appeals
## for the Eleventh Circuit

---

### GSR MARKETS LIMITED,

*Plaintiff-Appellant,*

v.

### WELLS FARGO BANK, N.A.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
No. 1-19-CV-1005 — Michael L. Brown, *Judge*

---

## BRIEF OF PLAINTIFF-APPELLANT GSR MARKETS LIMITED

---

Richard L. Robbins
Georgia Bar No. 608030
Vincent R. Russo
Georgia Bar No. 242628
Rachel F. Gage
Georgia Bar No. 547982
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Tel:   (678) 701-9381
Fax:   (404) 856-3255
rrobbins@robbinsfirm.com
vrusso@robbinsfirm.com
rgage@robbinsfirm.com

*Counsel for Plaintiff-Appellant*
*GSR Markets Limited*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Plaintiff-Appellant hereby certifies that the below is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal.

1. Alivic Corporation Pty, Ltd.

2. Austin, Brandon

3. Austin, Hugh

4. Brown, Hon. Michael L. (Judge, United States District Court for the Northern District of Georgia)

5. Burr & Forman LLP (Counsel for Defendant-Appellee)

6. Gage, Rachel F. (Counsel for Plaintiff-Appellant)

7. GSR Markets Limited (Plaintiff-Appellant) is owned by Yellow Capital Fund I, an Exempted Company incorporated in the Cayman Islands with limited liability.

8. Hitson, Brent (Counsel for Defendant-Appellee)

9. McDonald, Diana

10. McDonald Law Group, LLC

11. OTC Desks, Ltd., LLC

12. Robbins, Richard L. (Counsel for Plaintiff-Appellant)

13.     Robbins Alloy Belinfante Littlefield LLC (Counsel for Plaintiff-Appellant)

14.     Russo, Vincent R. (Counsel for Plaintiff-Appellant)

15.     Valkyrie Group, LLC

16.     Wells Fargo Bank, N.A. (Defendant-Appellee) disclosed in the trial court on May 1, 2019 that it is a wholly-owned subsidiary of WFC Holdings LLC, which is a wholly-owned subsidiary of Wells Fargo & Company (stock ticker symbol WFC). Wells Fargo & Company has no parent corporation. No publicly held corporation owns 10% or more of Wells Fargo & Company's stock.

17.     Yavorsky, Austin

## CORPORATE DISCLOSURE STATEMENT

Counsel for Plaintiff-Appellant certifies that there are no publicly held corporations that own 10% or more of Plaintiff-Appellant.

*/s/ Richard L. Robbins*
Richard L. Robbins

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant requests oral argument. This case presents important questions of law regarding the duty of financial institutions to act for the protection of non-depositors where they have direct knowledge of misappropriation by an account holder who the bank knows to be in a fiduciary relationship with the non-depositor. The District Court held that financial institutions have no duty of care under these circumstances, even though Georgia law, the Eleventh Circuit, and the Middle District of Georgia have recognized such a duty.  Oral argument will aid the Court in determining these questions of law.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................1

STATEMENT OF JURISDICTION...........................................2

INTRODUCTION .............................................................3

STATEMENT OF THE ISSUES..............................................8

STATEMENT OF THE CASE ................................................9

I.     Procedural History..................................................9

II.    Statement Of The Facts ...........................................10

   A.     Wells Fargo's Violations of "Know Your Customer" (KYC) Duties, and Failure of Periodic Monitoring ............................10

   B.     Wells Fargo's Failure to Address an Earlier Complaint Regarding a "Bitcoin Scam" Using McDonald's Account .........................11

   C.     Wells Fargo's Failure to Investigate Two Subsequent Complaints Regarding McDonald's Trust Account Prior to The GSR Transaction...............12

   D.     Wells Fargo Failed To Take Action After Receiving Notice of the Misappropriation From GSR .................................14

   E.     Wells Fargo's Failure to Take Prompt Action Despite Actual Notice of Misappropriation and Fraud........................16

   F.     GSR's Expert Testified That Wells Fargo Violated The Standard of Care 18

III.   The District Court's Order............................................20

IV.    Standard of Review. ..................................................21

SUMMARY OF THE ARGUMENT ........................................22

ARGUMENT AND CITATION OF AUTHORITY ...........................23

I.     The District Court Erred In Holding That Wells Fargo Did Not Have A Duty Of Care To GSR On The Basis That The Fiduciary Exception Does Not Apply...23

II.    The District Court Erred In Holding That Wells Fargo Did Not Have A Duty Of Care To GSR; There Is A Common Law Duty To Exercise Reasonable Care To Prevent Harm To Third Parties In Performing A Voluntary Undertaking. .............27

III.   The District Court Erred In Granting Summary Judgment In Favor of Wells Fargo On GSR's Claims For Punitive Damages And Attorneys' Fees...................30

CONCLUSION ...........................................................31

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

<u>Am. Nat. Bank of Macon v. Fid. & Deposit Co. of Md.</u>, 129 Ga. 126, 58 S.E. 867, 869 (1907)...................................................................................................25

<u>Carithers v. Mid-Continent Cas. Co.</u>, 782 F.3d 1240 (11th Cir. 2015)...................21

<u>Chaney v. Dreyfus Serv. Corp.</u>, 595 F.3d 219, 232 (5th Cir. 2010).......................23

<u>Chang v. JPMorgan Chase Bank, N.A.</u>, 845 F.3d 1087 (11th Cir. 2017) ...........7, 23

<u>Citizens Bank of Forsyth v. Middlebrooks</u>, 209 Ga. 330, 72 S.E. 298 (1952)........26

<u>Dalton Point, L.P. v. Regions Bank, Inc.</u>, 287 Ga. App. 468, , 651 S.E.2d 549 (2007)...........................................................................................................26

<u>First Am. Title Ins. Co. v. Eddings</u>, No. 4:12-CV-10 CDL, 2014 WL 106691 (M.D. Ga. Jan. 9, 2014) ..................................................................................24

<u>Georgia CVS Pharmacy, LLC v. Carmichael</u>, No. S22G0527, 2023 WL 4247591 (Ga. June 29, 2023)................................................................... 7, 22, 28

<u>Hofschutle v. SunTrust Banks, Inc.</u>, 2021 WL 5230732 (N.D. Ga. Mar. 4, 2021).21

<u>LanChile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am.</u>, 759 F. Supp. 811 (S.D. Fla. 1991).......................................................................................27

<u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273 (2d Cir. 2006) ......................................23

<u>Nat'l Nu Grape Co. v. Citizens & S. Nat. Bank</u>, 94 Ga. App. 5, 93 S.E.2d 381 (1956)...........................................................................................................25

<u>Smith v. Owens</u>, 848 F.3d 975 (11th Cir. 2017)...................................................21

<u>Tatnall Bank v. Harvey</u>, 186 Ga. 752, 198 S.E. 724 (1938)...................................26

<u>Wiand v. Wells Fargo Bank, N.A.</u>, 938 F. Supp. 2d 1238, 1248 (M.D. Fla. 2013)23

**Statutes**

28 U.S.C. § 1291 .................................................................................................3

28 U.S.C. § 1332 .................................................................................................2

**Other Authorities**

Restatement (Second) of Torts § 324A (1965).......................................................29

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Georgia ("District Court") had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as Plaintiff/Appellant GSR Markets Limited ("GSR") was completely diverse in citizenship from every defendant, and the amount in controversy exceeds the sum of $75,000.00.

On March 22, 2022, the District Court entered an Order and Opinion (the "Order") granting Defendant /Appellee Wells Fargo Bank, N.A. ("Wells Fargo")'s Motion for Summary Judgment as to GSR's claims against it. (Dkt. 250.)[1] On May 26, 2022, GSR and Defendants Diana McDonald and McDonald Law Group LLC d/b/a Law Office of Diana McDonald, LLC (collectively, "McDonald") filed a Stipulation of Dismissal Without Prejudice as to GSR's claims against McDonald (Dkt. 263.), and the clerk entered the dismissal of McDonald on May 31, 2022. (Dkt. 265.) On March 28, 2023, the Court entered judgment in favor of GSR against Valkyrie Group, LLC; Hugh Austin, and Brandon Austin (the "Valkyrie Defendants"), jointly and severally, in the amount of $1,562,762.24 plus costs, and entered final judgment in the case pursuant to Rule 54 of the Federal Rules of Civil

---

[1] Pursuant to Eleventh Circuit Rule 28-5, references to the record herein are made to the CM/ECF District Court docket number and page number.

Procedure.  (Dkt. 272.)  GSR timely filed its Notice of Appeal on April 14, 2023.  (Dkt. 273.)

Accordingly, this Court has appellate jurisdiction of this appeal pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1291.

## **INTRODUCTION**

The District Court granted summary judgment to Wells Fargo on GSR's negligence claim, erroneously concluding that even where a bank has actual knowledge of the use of an attorney trust account to perpetrate fraud, as well as numerous previous red flags regarding the account, it owes no duty to the victims of such fraud to take *any* action to protect funds in the trust account.

The District Court's ruling, if allowed to stand, will have stark consequences, giving banks **absolute** legal immunity against any claim by a non-depositor regardless of the factual circumstances, even though the bank is on notice of and has actual evidence that a depositor is embezzling funds of the non-depositor maintained in a fiduciary trust account.  This immunity would apply regardless of actual notice of fraud, regardless of other reports that the depositor has defrauded others by using the same trust account, regardless of actual knowledge of the bank that the non-depositor's funds have been taken by the depositor out of the trust account and used for personal purposes, and regardless of the bank's own written agreements with the depositor that the bank is entitled to

freeze the account if it receives complaints of fraud. There is evidence of all of these factors in this lawsuit.

The implications of such an absolute immunity are staggering. A bank in Georgia could have had actual notice, and indeed a video admission by Bernie Madoff, that he was illegally using trust funds, and have demands from non-depositor clients of Madoff to freeze the account and not let the embezzlement continue, and yet have no duty to do anything. There is nothing in Georgia law that extends such absolute protection to banks. That is an absurd reading of Georgia law, putting aside any rational analysis of a bank's ordinary standard of care. The District Court's Order must be reversed.

This case arises from a fraud perpetrated by McDonald, an attorney acting as escrow agent, and the Valkyrie Defendants, who defaulted and could not be found for years.[2] Per an escrow agreement, GSR sent McDonald $4 million to her Interest on Lawyer's Trust Account ("IOLTA") account at Wells Fargo for the

---

[2] Hugh Austin and Brandon Austin were recently arrested and charged in the Southern District of New York with crimes related to their actions described in this lawsuit. See *Father And Son Charged In Manhattan Federal Court With Multimillion-Dollar Cryptocurrency-Related Crimes*, Press Release, U.S. Attorney's Office, Southern District of New York, https://www.justice.gov/usao-sdny/pr/father-and-son-charged-manhattan-federal-court-multimillion-dollar-cryptocurrency. The Complaint against Hugh Austin identifies GSR as Victim 3, and can be viewed here: https://www.justice.gov/media/1305296/dl?inline. The Information against Brandon Austin can be viewed here: https://www.justice.gov/media/1305301/dl?inline.

4

purpose of purchasing bitcoin from the other parties.  It was critical to GSR that there was an attorney escrow agent with a trust account in a well-established bank. The trust funds were not to be released until the bitcoin was received by GSR. This was to provide protection in the event the bitcoin was not sent by the sellers, since the funds could only be released per the escrow agreement maintained in a large, supposedly reputable bank.  The bitcoin, however, was never transferred. McDonald and the other defendants siphoned off roughly $2 million of GSR's trust funds, which have disappeared and cannot be recovered.

GSR's losses would have been avoided had Wells Fargo acted properly and shut down or at least frozen McDonald's trust account after receiving several notices of potential fraud involving the account.  Wells Fargo instead violated the duty of care owed to parties such as GSR which have entrusted monies to a trust account maintained at the bank.  Wells Fargo's personnel and systems failed every step of the way.

Wells Fargo received numerous red flags about McDonald and her IOLTA trust account well before GSR wired the funds to the account, which would have triggered action by any bank acting with even a minimal amount of diligence. There were three reported instances of potential fraud with the account, of which Wells Fargo was indisputably aware, before GSR transferred millions of dollars to the account.  Any periodic monitoring of the account, as Wells Fargo professes it

5

does, as well as compliance with the "know your customer" policy, as Wells Fargo purports to have in place, would have caused any reasonable bank to shut down or suspend activities in this account. The account should never have been open by the time GSR wired its funds to the account.

Even after GSR reported the problems in getting its escrowed funds back, Wells Fargo failed to act timely and responsibly. Wells Fargo's relationship manager, after the report by GSR, checked the account, saw that the funds were missing, saw that there were problematic transfers out of the account to McDonald's personal accounts and various third parties, and escalated the issue within Wells Fargo. The group to which the manager "escalated" the issue was on actual notice of misappropriation. Yet Wells Fargo did nothing for over a week, until after almost all the remaining funds had disappeared. Instead, Wells Fargo allowed the transfer of another $800,000 out of the account despite actual notice of fraud. The evidence that Wells Fargo violated the applicable duty of care was overwhelming; at a minimum, factual issues exist.

In granting summary judgment in favor of Wells Fargo on Plaintiff's claim for negligence, the District Court first rejected each of Wells Fargo's defenses, finding that Wells Fargo was not entitled to preemption or statutory immunity as a matter of law due to material questions of fact regarding its culpability for harm to GSR. The District Court nevertheless granted summary judgment to Wells Fargo,

summarily finding that Wells Fargo owed no common law duty of care to GSR, as a non-Wells Fargo customer. This was error. Even though financial institutions are generally not liable to noncustomers in cases of simple negligence, the Eleventh Circuit has recognized, and the Northern District of Georgia has applied, an exception to this rule: that a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation." Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1094-95 (11th Cir. 2017) (reversing grant of motion to dismiss and concluding complaint adequately alleged that bank owed non-depositor plaintiff a duty because (1) depositor owed plaintiff a fiduciary duty; (2) bank was aware of this fiduciary relationship; and (3) bank knew that depositor was misappropriating money from escrow account). The District Court erroneously dismissed this exception because the Chang case originated in Florida. The fiduciary exception, however, exists under Georgia as well as Florida law.

Moreover, the Supreme Court of Georgia has recently clarified that "[a] party may be liable for a failure to exercise reasonable care with respect to a voluntary undertaking." Georgia CVS Pharmacy, LLC v. Carmichael, No. S22G0527, 2023 WL 4247591, at *14 (Ga. June 29, 2023) (citing Section 324A of

7

the Restatement (Second) of Torts, which is also "an accurate statement of the common law" in Georgia).  Because Wells Fargo failed to exercise reasonable care, it may be liable to Plaintiff for negligence.  The District Court should be reversed.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in holding that Wells Fargo did not have a duty of care to GSR on the basis that Georgia law does not recognize the exception to the general rule that financial institutions are not liable to noncustomers in cases of simple negligence where a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation.

2.  Whether the District Court erred in holding that Wells Fargo did not have a duty of care to GSR, because Georgia law recognizes a common law duty to exercise reasonable care to prevent harm to third parties in performing a voluntary undertaking.

3.  Whether the District Court erred in granting summary judgment in favor of Wells Fargo on GSR's claims for punitive damages and attorneys' fees.

## STATEMENT OF THE CASE

### I.   Procedural History

Plaintiff-Appellant GSR brought this action against Defendant-Appellee Wells Fargo, as well as McDonald and the Valkyrie Defendants in the District Court.  GSR asserted claims against Wells Fargo for aiding and abetting fraud, breach of fiduciary duty, and conversion; negligence; accounting and equitable and injunctive relief; punitive damages; and attorneys' fees.  (Dkt. 76 ¶¶ 134–147, 153–163, 171–180, 190–198, 219–222, 244–251.)

After appearing through counsel and filing a motion to dismiss that was denied, the Valkyrie Defendants failed to answer the Complaint, and the Clerk entered default against each of them on September 25, 2020.  (Dkt. 96; 167.)  GSR, Wells Fargo, and McDonald then engaged in discovery.  Wells Fargo filed a Motion for Summary Judgment as to each of GSR's claims against it on July 9, 2021.  (Dkt. 217.)  The District Court granted that motion on March 22, 2022.  (Dkt. 250.)  GSR reached a settlement with McDonald and the parties filed a Stipulation of Dismissal Without Prejudice as to GSR's claims against McDonald.  (Dkt. 263.)  The clerk entered the dismissal of McDonald on May 31, 2022.  (Dkt. 265.)  On March 28, 2023, the Court entered judgment in favor of GSR against the Valkyrie Defendants and entered final judgment in the case pursuant to Rule 54 of the Federal Rules of Civil Procedure.  (Dkt. 272.)  GSR timely filed its Notice of Appeal on April 14, 2023.  (Dkt. 273.)

## II.    <u>Statement Of The Facts</u>

The evidence before the District Court showed that Wells Fargo engaged in ongoing misconduct, failing repeatedly to take appropriate action in response to reports of fraudulent activities on McDonald's accounts.

### A.    Wells Fargo's Violations of "Know Your Customer" (KYC) Duties, and Failure of Periodic Monitoring

Wells Fargo employs "Know Your Customer" policies to monitor various types of accounts, including IOLTAs and checking accounts.  (Dkt. 219-1 at 125.) These policies mandate periodic reviews of a customer's accounts.  (Id. at 127-128.)  Mr. Shannon described the policy as used to "make sure … [we] have a general idea of what they do" and for Wells Fargo to be comfortable that it does not have a customer that "may be engaging in fraudulent practices." (Dkt. 220-1 at 40.)

Wells Fargo ignored its Know Your Customer policies regarding McDonald, whose account history and past business dealings with Wells Fargo were full of red flags.  McDonald's business and account structures would be dubious to any financial institution.  McDonald—a sole proprietor attorney—operated under the names of **two** different law firms.  (Dkt. 220-1 at 96, 97, 102.)  She established **four** different IOLTA accounts for the two firms at Wells Fargo alone. (Dkt. 219-1 at 303-863; Dkt. 220-1 at 101-102.)  She had operating accounts and IOLTA accounts at other banks as well.  (Dkt. 237-1 at 22-23.)

McDonald's Wells Fargo accounts routinely held little or no money, often for years at a time, followed by short periods wherein she received huge sums of money from overseas accounts.  (Dkt. 220-1 at 102-109, 116-117.)  In some instances, McDonald would then transfer some or most of these funds – purportedly held in trust – to herself.  (Dkt. 220-1 at 108-109.)

McDonald also repeatedly told Wells Fargo personnel to expect multi-million-dollar transfers to her accounts that never materialized.  (Dkt. 223-1 at 402, 404; Dkt. 219-1 at 273-298; Dkt. 220-1 at 84-85, 92-93.)  Wells Fargo was on notice of these irregularities but took no action to address or investigate the situation.  (Dkt. 220-1 at 112, 116-117.)

### B.    Wells Fargo's Failure to Address an Earlier Complaint Regarding a "Bitcoin Scam" Using McDonald's Account

On or about January 25, 2018, Wells Fargo customer Rena McDonald alerted the bank that someone appeared to be perpetrating a bitcoin scam using the account ending in xxx4172.  Rena McDonald became aware of the activity because the account was opened under the same name as her law firm, McDonald Law Group.  (Dkt. 283-1 at 24-27.[3])  Rena McDonald specifically told Wells Fargo that the person using the account "was using [her] name for fraud." (Id. 28-29; 104.)

---

[3] GSR filed Dkt. 283 with the District Court on August 10, 2023 – after the record on appeal was transmitted – to correct an August 30, 2021 filing mistake in which the Deposition of Rena McDonald was mistakenly not filed (see Dkt. 237-2).  GSR intends to file a motion to supplement the record on appeal to include this document.

11

Shortly before this, on January 16, 2018, McDonald received a wire transfer of $135,000 into this same IOLTA account, which had sat dormant for years, then transferred $128,000 to Danat AL Khaleej Tourism at Emirates NBD Bank. (Dkt. 219-1 at 148-149; Dkt. 223-1 at 393.) On January 26, 2018, the transfer out of the account was returned and another transfer of $127,822 was made to a company in Beijing. (Dkt. 223-1 at 393.)

Wells Fargo did nothing to confirm the legitimacy of McDonald's operations or the transfers on her accounts. (Dkt. 219-1 at 141-145.) In fact, Wells Fargo did not even alert Mr. Shannon, its principal commercial banking representative handling McDonald's accounts, that it had received these reports. (Dkt. 220-1 at 119-120.) According to GSR's expert, a review of McDonald's IOLTA at the time of Rena McDonald's complaint "would have raised suspicions." (Dkt. 223-1 at 394.)

### C. Wells Fargo's Failure to Investigate Two Subsequent Complaints Regarding McDonald's Trust Account Prior to The GSR Transaction

The Rena McDonald report of potential fraud was not the only report. In the weeks before McDonald misappropriated funds from GSR, Wells Fargo received yet another report of potential fraud involving McDonald's IOLTA account by **two new parties**. On December 26, 2018, an individual named David Roth alerted Mr. Shannon that McDonald had failed to return **$600,000** she was ostensibly

holding in trust for his companies.  (Dkt. 220-1 at 123-124; Dkt. 219-1 at 955.)

Mr. Roth also stated that she had failed to return **$25,000** to a Mr. Mornay Johnson

of Phoenix, Arizona.  (Dkt. 220-1 at 124-126; Dkt. 219-1 at 956.)

Mr. Shannon admitted in his deposition that he received notice of these

complaints and was concerned by them.  (Dkt. 220-1 at 124-126.)  At the time of

Mr. Roth's complaint, McDonald's accounts contained just over **$100**.  (Id.

128:16-129:1; 129:25-130:17.)  Mr. Shannon's only response, however, was to ask

McDonald herself if there was an issue.  (Id. 128:16-129:1; 129:25-130:17.)

Wells Fargo did not freeze McDonald's accounts or conduct **any** specific

investigation after receiving notice of the misappropriation of Mr. Roth's and

Mr. Jackson's money.  (Dkt. 219-1 at 174-180.)  According to GSR's expert,

"[t]his communication should have raised a red flag and, in my opinion, initiated a

suspicious activity review of the law firm's accounts which would have pointed

out the transfers from IOLTAs to related McDonald and McGhee accounts." (Dkt.

223-1 at 394.)  Yet, Wells Fargo allowed McDonald to continue receiving millions

of dollars in her IOLTA account—and then allowed her to wire transfer millions of

dollars out of the IOLTA account—without a shred of monitoring, investigation, or

basic follow-up at all by the bank.  Millions of dollars went into this attorney

IOLTA account at Wells Fargo and then transferred out to various accounts,

13

including an account at a Chinese bank and other accounts of Diana McDonald, without even the most basic of inquiries.

The evidence before the District Court reflected that even before the notice from GSR, Wells Fargo had sufficient reason to anticipate the fraudulent activities with McDonald's IOLTA account giving rise to GSR's injuries, as Wells Fargo had notice by three different parties of suspicious activities related to McDonald's IOLTA account. Had Wells Fargo taken reasonable security measures, that account would not have been available for McDonald to use to perpetrate yet another fraud.

### D. Wells Fargo Failed To Take Action After Receiving Notice of the Misappropriation From GSR

Only two weeks after receiving notice from two parties of improper activities with the IOLTA account (and less than a year after being on notice of potential fraud with the account by Rena McDonald), Wells Fargo received notice of McDonald's misappropriation of GSR's funds on January 7, 2019. Thus, there were now **four** reports of potential fraud with the account.

On that day, attorney Aaron Krowne and GSR principal Cris Gil had multiple communications with Mr. Shannon, alerting him of the situation and asking for an investigation of the IOLTA ending in xxx4172. (Dkt. 220-1 at 132, 134-136; Dkt. 219-1 at 973.) Mr. Krowne first emailed Mr. Shannon and informed him that GSR had transferred $4 million to McDonald to be held in

escrow. (Dkt. 220-1 at 132, 134-136.) Mr. Krowne also informed Mr. Shannon that it had requested return of its funds, but that McDonald had been unresponsive. (Id.) Due to McDonald's conduct, Mr. Krowne specifically requested that Wells Fargo "initiate the process of potentially freezing and returning the mishandled IOLTA funds." (Id.)

After receiving GSR's email, Andrew Shannon admittedly reviewed the account statement for IOLTA xxx4172 which, at the time, indicated a ledger balance of $1,310,000. (Dkt. 219-1 at 377.) Wells Fargo also received copies of GSR's emails with McDonald, who had represented to GSR that she would return its money the following day. (Dkt. 219-1 at 976; Dkt. 226-1 at 67-70.) Wells Fargo **knew** at this point that there were insufficient funds in McDonald's trust account to account for GSR's $4 million and could see that McDonald had already transferred $440,000 of the funds to her business checking accounts. (Dkt. 220-1 at 143, 145-146.)

Given the apparent misappropriation, Mr. Shannon "escalated" the issue for review. (Dkt. 220-1 at 145-146.) Mr. Shannon testified that the situation, particularly considering the other reports he had recently received, concerned him:

> Q. So 12 days later you have two reports December 26 of Diana McDonald is not giving them escrow funds back, and they have hundreds of thousands of dollars with her and they're very concerned about her credibility; and 12 days later you get a report from another company involving much more money, correct?

15

MR. HITSON: Object to the form.

**A. Yes, sir.**

Q. By this time you have to be really concerned what's going on with Diana McDonald and her trust accounts, fair to say?

MR. HITSON: Object to the form.

**A. Yes, sir.**

(Id. at 133.)

### E.    Wells Fargo's Failure to Take Prompt Action Despite Actual Notice of Misappropriation and Fraud

Even after receiving GSR's adverse claim, and knowing that McDonald's IOLTA had insufficient funds to cover the amount claimed, Wells Fargo *again* authorized an $800,000 wire transfer from McDonald's IOLTA the very next day. (Dkt. 237-3 at 33.)  The Wells Fargo employee who approved the wire, Jennifer Floyd, was aware of GSR's adverse claim at the time.  Ms. Floyd was copied on GSR's email to Mr. Shannon, had reviewed the account information, and was aware that the issue had been elevated to her superior for review.  (Id. at 26, 33.) Yet no one told her to do otherwise.

Wells Fargo then covered up its failure to take reasonable security measures and freeze McDonald's account immediately.  Before the lawsuit was filed and while GSR repeatedly urged Wells Fargo to act, Wells Fargo falsely claimed that it

16

could not do so. (Dkt. 221-5 at 69.)  Nor did Wells Fargo share with GSR that it authorized another $800,000 transfer of GSR's funds after being put on notice by GSR.  (Dkt. 219-1 at 185-187.)  Even after this lawsuit was filed, Wells Fargo's 30(b)(6) witness repeated the lie that it could not legally freeze McDonald's account without a court order.  (Dkt. 219-1 at 110.) This testimony was false.

Wells Fargo is legally authorized to freeze accounts in these circumstances, and Wells Fargo's own agreements authorized it to freeze accounts such as those here.  Wells Fargo's Deposit Account Agreement policy, which applied to McDonald's IOLTAs, states as follows:

> **What are we allowed to do if there is an adverse claim against your account?**
>
> An adverse claim occurs when
>
> - Any person or entity makes a claim against your account funds,
> - We believe a conflict exists between or amount your account owners, or
> - We believe a dispute exists over who has account ownership or authority to withdraw funds from your account.
>
> In these situations, we may take any of the following actions without any responsibility to you:
>
> - […] **Freeze all or a part of the funds in your account until we believe the dispute is resolved to our satisfaction.**
> - **Close your account and send a check for the available balance in your account payable to you or to you and each person or entity who claimed the funds.**

(Dkt. 220-1 at 283; see also Dkt. 220-1 at 168-170.) Wells Fargo's Commercial Account Agreement policy, which also would have applied to McDonald's

IOLTAs, contains similar provisions, including that the Bank may "freeze all or part of the funds in [the account] until the dispute is resolved…" (Dkt. 220-1 at 346; see also Dkt. 220-1 at 173-174.)

Contrary to Wells Fargo's stated corporate position, further discovery showed that Wells Fargo ultimately did freeze McDonald's accounts well before a court order was obtained, but by then it was too late for GSR. Jennifer Floyd testified that she was told on either January 14 or 16 "to just do nothing, say nothing, don't touch anything," which she took to mean she wasn't to "to authorize wires, verify anything, do anything with these accounts." (Dkt. 237-3 at 28-29.) Though Floyd was told to "do nothing" with McDonald's accounts, she never received anything in writing to that effect. (Id. at 30.) A jury could infer that by this time Wells Fargo knew it had a serious legal problem in not acting more quickly to stop the misappropriation of funds.

### F.   GSR's Expert Testified That Wells Fargo Violated The Standard of Care

GSR retained an expert in risk management and compliance for financial institutions to opine on Wells Fargo's conduct, based on Wells Fargo's own policies as well as industry standards. Terri Sands is a consultant, speaker, and trainer on topics including payments risk management and strategy, operational compliance, and operational risk management improvements. (Dkt. 223-1 at 387.) Sands opined that "Wells Fargo was grossly negligent in preventing financial loss

to GSR Markets through its inaction, mishandling, and/or failure to address the Diana McDonald relationship from a risk and fraud perspective." (Id. at 400.)

In reviewing the information Wells Fargo had at its disposal in January 2019 regarding McDonald's trust account, Sands concluded that "a review of account xxx4172 would have raised suspicions" because an account with limited activity for two years suddenly had frequent activity, coupled with an adverse claim of fraudulent activity and an international wire transfer that was returned. (Id. at 394.) Such a review, however, did not take place.

Sands also opined that the report from David Roth regarding McDonald's fraud "should have raised a red flag and…initiated a suspicious activity review of the law firm's accounts which would have pointed out the transfers from IOLTAs to related McDonald and McGhee accounts." (Id.)

Regarding Wells Fargo's ability to stop the misappropriation that was occurring, Sand stated:

> There is nothing in the policies or procedures provided that prohibit freezing funds absent a court order. Wells Fargo banking representatives who are managers, work with customer accounts, or deal with compliance issues should be apprised of the right of the bank to freeze accounts where there is a complaint or potential fraud or claims to monies in an account. This is a well-established control in the banking industry used to mitigate losses due to potential fraudulent or other illegal activity. It is, at a minimum, grossly negligent on Wells Fargo's part that its corporate designee claimed to be unaware that Wells

19

Fargo has the right to freeze funds based on the *Deposit Account Agreement*.

(Id. at 395.)  "The fact that McDonald was able to initiate and have approved $800,000 in wire transfers from her account the day following Wells Fargo's receipt of the third adverse claim against her accounts within a one-year period is inexplicable."  (Id. at 400.)  Upon remand, the jury will therefore hear expert opinion testimony on Wells Fargo's duties and its failure to comply with those duties.

## III.   The District Court's Order.

In its Order granting Wells Fargo's Motion for Summary Judgment, the District Court recognized Wells Fargo's misconduct, finding "a genuine dispute as to whether Defendant knew or should have known, by at least January 7, that Ms. McDonald was using her IOLTA Account for fraudulent purposes."  (Dkt. 250 at 37-38.)  Based on this, the District Court rejected Wells Fargo's claims of preemption by Article 4A of the UCC, and statutory immunity under O.C.G.A. § 7-1-352.

With regard to GSR's negligence claim, the District Court granted summary judgment to Wells Fargo based on the erroneous conclusion that Wells Fargo did not owe GSR a duty of care:

> The Court agrees Defendant owed Plaintiff no common law duty.  Plaintiff was not a customer and did not otherwise have a direct relationship with Defendant. The

20

> Court thus agrees with the weight of persuasive authority from numerous jurisdictions holding that banks do not owe a duty of care to non-customers in the context of common law tort claims. Because there is no recognized duty of care, there can be no breach. The Court thus grants Defendant's motion as to Plaintiff's negligence claim.

(Dkt. 250 at 45-46 (citing Hofschutle v. SunTrust Banks, Inc., 2021 WL 5230732, at *2 (N.D. Ga. Mar. 4, 2021).) The District Court also held that the exception to the general rule that banks do not owe a duty of care to non-customers – where the account holder is in a fiduciary relationship with the plaintiff – did not apply. (Id. at 46 n.9.)

The District Court also granted summary judgment in favor of Wells Fargo on GSR's claims for punitive damages and attorneys' fees, on the basis that those claims failed along with GSR's substantive claims. (Dkt. 250 at 54-55.)

## IV.  **Standard of Review.**

This Court reviews "a district court's decision on summary judgment *de novo* and appl[ies] the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." Smith v. Owens, 848 F.3d 975, 978 (11th Cir. 2017); see also Carithers v. Mid-Continent Cas. Co., 782 F.3d 1240, 1245 (11th Cir. 2015) ("We review *de novo* the grant of summary judgment and the denial of summary judgment.")

## SUMMARY OF THE ARGUMENT

The District Court summarily concluded that Wells Fargo had no duty of care to GSR, even though McDonald's account was an attorney trust account; the bank was aware of a number of irregularities regarding the account before GSR's money was ever deposited; and was told directly by GSR of a likely fraud in progress after the funds were deposited. Under these facts, a well-established exception to the general rule that a financial institution does not owe a duty of care to a noncustomer applies, and Wells Fargo had a duty to exercise reasonable care with regard to GSR's funds.

Wells Fargo also had a duty to GSR under Section 324A of the Restatement (Second) of Torts because Wells Fargo voluntarily undertook to administer McDonald's trust account. Under the recent Georgia Supreme Court case of Georgia CVS Pharmacy, LLC v. Carmichael, No. S22G0527, 2023 WL 4247591 (Ga. June 29, 2023), Wells Fargo had a duty to exercise reasonable care in carrying out this voluntary undertaking. GSR relied on Wells Fargo to exercise such care, as it would not have entrusted the funds to a non-trust account. For this additional reason, the District Court erred in concluding that Wells Fargo owed no duty to GSR and thus could not be held liable for negligence.

## ARGUMENT AND CITATION OF AUTHORITY

### I. The District Court Erred In Holding That Wells Fargo Did Not Have A Duty Of Care To GSR On The Basis That The Fiduciary Exception Does Not Apply.

While financial institutions are generally not liable to noncustomers in cases of simple negligence, "there is an exception to this rule: a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation."  Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1094–95 (11th Cir. 2017); see also Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1248 (M.D. Fla. 2013) (citing Chaney v. Dreyfus Serv. Corp., 595 F.3d 219, 232 (5th Cir. 2010)); Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) (A bank may be liable for diversion of funds by fiduciary if it has "notice or knowledge that a diversion is intended or being executed."  Such knowledge creates a "duty to make reasonable inquiry and endeavor to prevent a diversion."). The District Court erred in concluding that Wells Fargo owed no duty of care to GSR on the stated basis that the foregoing exception does not apply in Georgia. (Dkt. 250 at 45-46 n.9 (quoting Wells Fargo's reply brief, Dkt. 240 at 14).)  The fiduciary exception has been recognized in multiple jurisdictions, including

Georgia. The District Court should be reversed and a jury given the opportunity to consider whether Wells Fargo had a duty to GSR under the facts here.

The United States District Court for the Middle District of Georgia applied the fiduciary exception in First Am. Title Ins. Co. v. Eddings, No. 4:12-CV-10 CDL, 2014 WL 106691, at *3 (M.D. Ga. Jan. 9, 2014). The Eddings court held that a bank may be held "liable for its customer's misappropriation of trust account funds [where there is] evidence that the bank had knowledge that the customer was acting dishonestly or intended to commit a breach of trust." In other words, "[a]lthough a bank is not required to monitor the daily account activity of its customer accounts to look for dishonesty and breach of trust, it cannot ignore evidence that would put it on notice of such activity." Eddings, 2014 WL 106691, at *3.

Eddings involved an attorney trust account from which the defendant law firm misappropriated escrowed funds meant for loan payoffs. Id. The evidence reflected that at the time of the plaintiff's loss, the defendant bank knew: that its customer had previously failed to make a timely payoff for a loan closing from a trust account at the defendant bank; that to cover up this failure, its customer manufactured a fake wire transfer confirmation; that its customer had a history of running negative balances in its trust account; and that its customer had engaged in suspicious deposit practices. Id. at *4. Despite its knowledge, the bank took no

24

action to address the fraudulent activity. The bank did not close the trust account when the plaintiff's loss took place two months later, and only closed the account after the law firm's business manager confessed to misappropriation. Id.

The court found a genuine factual dispute "as to whether these circumstances could lead a reasonable jury to conclude that the only inference to be drawn from these circumstances is that as of [a date preceding the fraud at issue in the case], [the bank] knew that its customer was misappropriating funds from its…trust account." Id. at *5. In other words, "a reasonable jury could conclude that those circumstances would have led a reasonably prudent bank to reach as its only conclusion that its customer was breaching the trust of the intended beneficiaries of the funds deposited in its trust account." Id. at *3.

Georgia courts have long held that "'[i]f a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting.'" Nat'l Nu Grape Co. v. Citizens & S. Nat. Bank, 94 Ga. App. 5, 13, 93 S.E.2d 381, 387 (1956) (quoting Am. Nat. Bank of Macon v. Fid. & Deposit Co. of Md., 129 Ga. 126, 58 S.E. 867, 869 (1907)). Where circumstances raise a presumption of knowledge on the part of the bank that a depositor is acting dishonestly in violation of trust, the bank is charged with knowledge and can be held liable. Id.; see also Citizens Bank of Forsyth v.

25

Middlebrooks, 209 Ga. 330, 332, 72 S.E. 298, 299-300 (1952) ("if a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting"); Tatnall Bank v. Harvey, 186 Ga. 752, 198 S.E. 724 (1938) (same). Liability for the bank will lie where the circumstances are "such as to raise a presumption of knowledge that the [customer] is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the sole inference that a breach of trust is intended." Dalton Point, L.P. v. Regions Bank, Inc., 287 Ga. App. 468, 471-72, 651 S.E.2d 549, 552 (2007).

The evidence in the record of this case is sufficient to establish a genuine issue of material fact as to whether and when Wells Fargo was on notice and/or knew of McDonald's multiple instances of misappropriation. The evidence thus establishes that the exception applies and Wells Fargo may be held liable for failing to act. It is indisputable that the first two elements are established. An IOLTA account's sole purpose is to hold in trust the funds of others and Wells Fargo knew of the fiduciary relationship between McDonald and those whose funds were held in the account, including GSR.

As to the third element regarding whether and when Wells Fargo was on notice of McDonald's misconduct, there are factual questions that should be put to

26

a jury. Cf. LanChile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am., 759 F.

Supp. 811, 814 (S.D. Fla. 1991) ("Actual or constructive knowledge is a factual

question . . . ."). A jury should be allowed to consider whether McDonald's long

history of problematic transactions, false representations to Wells Fargo's

personnel, and multiple reported incidents of improper behavior and scams being

perpetrated using her accounts amounts to notice; an accountholder's past pattern

of conduct goes to show the "totality of the circumstances" that would put an

institution on notice that that misappropriation is intended or occurring. See, e.g.,

Eddings, 2014 WL 106691, at *3-5 (M.D. Ga. Jan. 9, 2014) (summary judgment

denied where bank had notice of customer's dubious account history and

"suspicious deposit practices.").

Where a bank knowingly holds funds on behalf of a fiduciary, and also

knows that those funds are being misappropriated or diverted by the fiduciary, a

duty to the rightful owner of the funds to exercise reasonable care to stop or

prevent such diversion arises. The District Court erred in holding that Wells Fargo

had no duty to GSR under the facts of this case.

## II.    **The District Court Erred In Holding That Wells Fargo Did Not Have A Duty Of Care To GSR; There Is A Common Law Duty To Exercise Reasonable Care To Prevent Harm To Third Parties In Performing A Voluntary Undertaking.**

The recent opinion of the Georgia Supreme Court in Georgia CVS

Pharmacy, LLC v. Carmichael, No. S22G0527, 2023 WL 4247591 (Ga. June 29,

2023) affirms a principle closely related to the fiduciary exception discussed above – that there is a duty to use reasonable care in carrying out a voluntary undertaking.

In <u>Carmichael</u>, the Georgia Supreme Court considered whether a party providing security services to an owner or occupier of land owes a duty of care to third parties on the bases set out in Section 324A of the Restatement (Second) of Torts ("Section 324A"), which governs liability for the negligent performance of a voluntary undertaking.  The Court concluded that Section 324A, which it recognized as "an accurate statement of the common law," applies to "*any* undertaking to render services to another, where the actor's negligent conduct in the manner of performance of his undertaking, or his failure to exercise reasonable care to complete it, or to protect the third person when he discontinues it, results in physical harm to the third person or his things."  <u>Id.</u> at *14.  The Court further held that "the scope of the duty owed may be informed by the contract between the security provider and the proprietor."  <u>Id.</u>

Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or

28

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

Here, Wells Fargo voluntarily undertook to administer McDonald's IOLTA trust account, which it knew to be a fiduciary account utilized to hold third parties' money in trust.  GSR relied on the fact that McDonald's trust account resided at Wells Fargo, a large, reputable bank.  Additionally, Wells Fargo's Deposit Account Agreement policy, which applied to McDonald's IOLTAs, informs the scope of its duty, pursuant to Carmichael.  The policy states that in the event of an adverse claim:

> …we may take any of the following actions without any responsibility to you:
> - […] Freeze all or a part of the funds in your account until we believe the dispute is resolved to our satisfaction.
> - Close your account and send a check for the available balance in your account payable to you or to you and each person or entity who claimed the funds.

(Dkt. 220-1 at 283; see also Dkt. 220-1 at 168-170.)

Additionally, GSR's expert provided undisputed testimony that the bank had the ability "to freeze accounts where there is a complaint or potential fraud or claims to monies in an account. This is a well-established control in the banking

29

industry used to mitigate losses due to potential fraudulent or other illegal activity." (Dkt. 223-1 at 395.)

The <u>Carmichael</u> court made clear that Section 324A has broad application, and it applies to this case. Wells Fargo voluntarily undertook to administer the trust account and GSR relied on Wells Fargo to administer the trust account with reasonable care. Wells Fargo had a duty to take reasonable steps to stop the harm to GSR based on its knowledge of McDonald's misappropriation – and Wells Fargo's account policy spells out exactly what the bank could have, and should have, done. Accordingly, the District Court erred in holding that Wells Fargo did not have a duty of care to GSR for the additional reason that Section 324A gives rise to such a duty.[4]

## III. <u>The District Court Erred In Granting Summary Judgment In Favor of Wells Fargo On GSR's Claims For Punitive Damages And Attorneys' Fees.</u>

Because the District Court's decision to grant summary judgment on GSR's negligence claim should be reversed, so should its grant of summary judgment on GSR's claims for punitive damages and attorneys' fees, which were dismissed on the sole basis that those claims failed with GSR's substantive claims. (Dkt. 250 at

---

[4] Should this Court determine that there are "no clear controlling precedents in the appellate court decisions of this State" regarding application of Section 324A to these facts, GSR respectfully suggests that certification to the Supreme Court of Georgia may be appropriate. Ga. Supreme Ct. R. 46.

54-55.)  A jury should have the opportunity to consider GSR's claims for punitive

damages and attorneys' fees along with its claim for negligence against Wells

Fargo.

### CONCLUSION

The District Court erred by holding that Wells Fargo did not owe a duty of

reasonable care to GSR and thus could not be held liable for negligence as a matter

of law.  Under the facts of this case, Wells Fargo clearly had a duty to act to

prevent harm to GSR, but failed to do so.  The law does not protect a financial

institution that knows a trust account is being used for fraud but does nothing to

protect the owner of the misappropriated funds.  A jury should have the

opportunity to consider GSR's claims for negligence, punitive damages, and

attorneys' fees against Wells Fargo.

Respectfully submitted this 10th day of August, 2023.

*/s/ Richard R. Robbins*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Rachel F. Gage
rgage@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia  30318
Telephone:  (678) 701-9381
Facsimile:    (404) 856-3255

31

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 7,027 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This 10th day of August, 2023.

*/s/ Richard L. Robbins*
Richard L. Robbins

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2023, I electronically filed the foregoing **BRIEF OF PLAINTIFF-APPELLANT GSR MARKETS LIMITED** through the Court's CM/ECF system, which will send a Notice of Electronic Filing to all participants who are registered CM/ECF users. Further, I certify that I have caused a copy of the foregoing to be sent via first class mail to the following:

> Brent David Hitson
> Burr & Forman LLP- B. AL
> Suite 3400
> 420 North 20th Street
> Birmingham, AL 35203

This 10th day of August, 2023.


> */s/ Richard L. Robbins*
> Richard L. Robbins
>
> *Counsel for Plaintiff-Appellant*
> *GSR Markets Limited*